E. MARTIN ESTRADA
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
ADAM P. SCHLEIFER (Cal. Bar No. 313818)
Assistant United States Attorney
Corporate and Securities Fraud Strike Force
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4849
     Facsimile: (213) 894-6269
     E-mail:   adam.schleifer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:24-cr-754-SVW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT ADAM LEVIN |
| v. | |
| ADAM LEVIN, | |
| Defendant. | |

    1.   This constitutes the plea agreement between Adam Levin

("defendant") and the United States Attorney's Office for the Central

District of California (the "USAO") in the investigation into

defendant's entry into and participation in a conspiracy by which

defendant would pay undisclosed compensation for the promotion of an

offering of securities of a company for which defendant served as

founder and chairperson.  This agreement is limited to the USAO and

cannot bind any other federal, state, local, or foreign prosecuting,

enforcement, administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to the sole count of the information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with a conspiracy to violate 15 U.S.C. §§ 77q(b), 77x in violation of 18 U.S.C. § 371.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by email at usacac.FinLit@usdoj.gov.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed

1  Financial Disclosure Statement and all required supporting documents,
2  as well as other relevant information relating to ability to pay.

3       i.   Authorize the USAO to obtain a credit report upon
4  returning a signed copy of this plea agreement.

5       j.   Consent to the USAO inspecting and copying all of
6  defendant's financial documents and financial information held by the
7  United States Probation and Pretrial Services Office.

8                    THE USAO'S OBLIGATIONS

9    3.   The USAO agrees to:

10      a.   Not contest facts agreed to in this agreement.

11      b.   Abide by all agreements regarding sentencing contained
12 in this agreement.

13      c.   At the time of sentencing, provided that defendant
14 demonstrates an acceptance of responsibility for the offense up to
15 and including the time of sentencing, recommend a two-level reduction
16 in the applicable Sentencing Guidelines offense level, pursuant to
17 USSG § 3E1.1, and recommend and, if necessary, move for an additional
18 one-level reduction if available under that section.

19      d.   Recommend that defendant be sentenced to a term of
20 imprisonment no higher than the low end of the applicable Sentencing
21 Guidelines range, provided that the offense level used by the Court
22 to determine that range is 17 or higher.  For purposes of this
23 agreement, the low end of the Sentencing Guidelines range is that
24 defined by the Sentencing Table in USSG Chapter 5, Part A.

25      e.   Except for criminal tax violations (including
26 conspiracy to commit such violations chargeable under 18 U.S.C.
27 § 371), not further criminally prosecute defendant for violations of
28 18 U.S.C. §§ 1341, 1343, 1348, 1956, or 1957 arising out of

                              3

defendant's conduct described in the agreed-to factual basis set forth in paragraph 10, below.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

<u>NATURE OF THE OFFENSE</u>

4.    Defendant understands that for defendant to be guilty of the crime charged, that is, conspiracy to tout securities for undisclosed compensation, in violation of 18 U.S.C. § 371, the following must be true:

a.    There was an agreement between two or more persons willfully to violate 15 U.S.C. § 77q(b), that is, to describe a security offered for sale without disclosing the receipt of compensation from the issuer of that security;

b.    Defendant became a member of that conspiracy knowing of its object and intending to help accomplish it; and

c.    One of the members of the conspiracy performed at least one overt act for the purpose of carrying it out.

The elements of the underlying crime that was the object of the conspiracy, that is, 15 U.S.C. §§ 77q(b), 77x, are as follows:

a.    Description of a security in any communication or publication;

       b.   Use of the means or instruments of transportation or communication in interstate commerce or the mails to describe such security;

       c.   Receipt of consideration directly or indirectly for describing such security;

       d.   Willful failure to disclose fully the receipt and amount of any consideration.

<u>PENALTIES AND RESTITUTION</u>

5.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 371 is: 5 years of imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands that defendant may be required to pay full restitution to victims of the offense to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in USSG § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in USSG § 1B1.3, in connection with those charges.

7.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant

fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning no later than in or about February 2020, and continuing through at least in or about August 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant, along with coconspirators Jonathan William Mikula (aka "William Mikula,"), Christian Fernandez (aka "Christian Crockwell"), Amit Raj Beri (aka "Raj Beri"), D.L., S.B., and others, conspired knowingly and willfully by the use of the means and instruments of transportation and communication in interstate commerce to publish articles, letters, investment services, and communications which, though not purporting to offer securities for sale, described such securities for a consideration received and to be received, directly and indirectly, from issuers without fully disclosing the receipt, whether past or prospective, of such consideration and the amount

thereof, in violation of Title 15, United States Code, Sections 77q(b) and 77x.

Defendant was a resident of Los Angeles and the founder and Chairman of the Board of Hightimes Holding Corporation ("Hightimes"), a Delaware corporation with a principal place of business in Los Angeles.  Hightimes owned and operated <u>High Times</u>, a magazine and brand devoted to cannabis.  Hightimes was qualified by the United States Securities and Exchange Commission ("SEC") to conduct a securities offering under Regulation A from March 2018 until June 2020, though it actually offered securities under Regulation A through December 2022.

Palm Beach Venture was a publisher of promotional pieces for offerings of securities, including securities traded "over-the-counter" ("OTC"), i.e., lower-priced, illiquid securities traded not on public exchanges but instead through "market makers," as well as unregistered securities offered pursuant to Regulation A of the Securities Act of 1933 ("Regulation A"), which permits the offering and sale of certain securities to the public under more limited disclosure requirements than would traditionally be required for publicly reporting companies.

Pursuant to Section 17(b) of the Securities Act of 1933 (15 U.S.C. § 77q(b)), those who receive consideration directly or indirectly from an issuer for publishing, giving publicity to, or circulating any advertisement or communication that describes the issuer's security offered for sale are required to fully disclose the consideration received.

Subscribers to Palm Beach Venture made up a significant percentage of funds raised through offerings promoted and touted

through Palm Beach Venture, and defendant and his coconspirators knew and understood that placement in Palm Beach Venture provided issuers with a valuable avenue of exposure to potential investors.

Palm Beach Venture promoted Hightimes between in or around April 2020 and in or around August 2021.  During the promotion period, Hightimes raised approximately $20 million from more than ten investor-victims, with at least $6 million in investment proceeds associated with Palm Beach Venture's promotion.

Knowing that placement within and promotion by Palm Beach Venture permitted issuers to reach additional investors and raise additional funds, defendant conspired with Mikula, Fernandez, Beri, and D.L. to pay $150,000 in undisclosed compensation to those coconspirators so that Mikula would cause Hightimes to be promoted in Palm Beach Venture.  For the same reason, and to achieve the same ends, defendant paid for tens of thousands of dollars of entertainment expenses (in the form of boat rentals, food and alcohol, and other sundry services) lavished upon Mikula, Fernandez, Beri, and others.

Coconspirator D.L. was an attorney and resident of Ontario, Canada, who created and administered a sham entity, 2749960 Ontario LTD, whose purpose was to conduct international financial transactions by which it received the criminal proceeds of the conspiracy in Canada.

Coconspirator Beri was a resident of West Hollywood, California, and Florida, and was Chief Executive Officer ("CEO") of a Delaware corporation with a principal place of business in Beverly Hills, California.

Coconspirator S.B. was a resident of Truckee, California, and the founder and CEO of a Delaware corporation doing business, in Miami, Florida, San Mateo, California, and elsewhere (the "Miami Issuer").  In exchange for undisclosed compensation willfully arranged by coconspirator S.B., Palm Beach Venture promoted the Miami Issuer.

To conceal the nature of the conspiracy and promote its object, defendant also employed sophisticated means, including by entering into a sham "Marketing Agreement" with coconspirator D.L. and routing defendant's undisclosed payments through a Canadian bank account and to a Canadian shell corporation.

On or around the dates set forth below, in furtherance of the conspiracy, and to accomplish its object, defendant, together with coconspirators Mikula, Fernandez, Beri, D.L., S.B., and others, committed and willfully caused others to commit, the following overt acts, among others, within the Central District of California and elsewhere:

- On April 3, 2020, defendant and coconspirator D.L. entered into a "Marketing Agreement" by which "2749960 Ontario Ltd." purported to agree to provide "marketing services to Hightimes Holding Corp."

- On April 6, 2020, in consideration for the funds defendant had committed to send, coconspirator Mikula caused Palm Beach Venture to promote Hightimes's Regulation A offering, which promotion included the materially false representation that "Neither the Palm Beach Research Group nor its affiliates receive compensation for bringing this deal to you."

- On August 30, 2020, in a text message, coconspirator Fernandez informed defendant of "another push" for Hightimes in Palm Beach Venture, with "September 7th" as the targeted date, to which defendant responded, "Yesss."

- On August 31, 2020, in response to coconspirator Fernandez's request that defendant wire funds in consideration for the upcoming promotion of Hightimes, defendant text-messaged a screenshot of a bank confirmation for an international bank wire of $100,000 from an account controlled by defendant in the United States to a bank in Ontario, Canada.

- On September 2, 2020, in a text message, coconspirator Fernandez wrote to defendant, "Amigo you owe $150 not $100 Porfavor It's almost 7th."

- On September 3, 2020, after additional text messages between defendant and coconspirator Fernandez about whether defendant's wire for $100,000 into an account in Ontario, Canada, had cleared, defendant sent coconspirator Fernandez an additional text-message verification of that bank wire, to which coconspirator Fernandez responded, "Once is clear I will tell them the green light for Hightimes push."

- On September 3, 2020, in consideration for Palm Beach Venture's promotion of Hightimes, defendant caused Hightimes to wire $100,000 to 2749960 Ontario Ltd.

- On September 22, 2020, in a text message exchange, coconspirator Fernandez told defendant, "We are writing about cannabis this week an update and we want HT to be part of this as recommended for the readers.  Once [your

payment] clears I'll let you know," to which defendant responded, "K," and then, after coconspirator Fernandez confirmed "funds seem reflected," defendant responded, "Yessss."

- On September 22, 2020, defendant caused Hightimes to wire $25,000 to 2749960 Ontario Ltd. in furtherance of the criminal conspiracy and in consideration for Palm Beach Venture's promotion of Hightimes.

- On September 23, 2020, coconspirator Mikula caused Palm Beach Venture to promote the Hightimes's Regulation A offering, which promotion included the materially false representation that "Neither the Palm Beach Research Group nor its affiliates receive compensation for bringing this deal to you."

- On October 16, 2020, in consideration for Palm Beach Venture's promotion of Hightimes, defendant LEVIN caused Hightimes to wire $25,000 to 2749960 Ontario Ltd.

Defendant also provided false testimony to the SEC in connection with its civil-enforcement investigation into the same conduct to which defendant is agreeing to plead guilty. Specifically, defendant willfully provided knowingly and materially false testimony to the SEC concerning his understanding the nature and purposes of the agreements he entered into with his conconspirators as well as the purpose for the undisclosed compensation he provided to them. For example, when asked, "was [it] a pay to play arrangement," defendant testified, willfully and materially falsely, "I actually never, you know, understood that there was a pay to play arrangement." And when asked whether defendant understood that "some of that 5% . . . might

12

go back to Mr. Mikula," defendant testified, willfully and materially falsely, "None at all.  None at all. Just the opposite, actually."

SENTENCING FACTORS

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

12.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 6 | USSG § 2B1.1(a)(2) |
| Specific Offense Characteristics: | | |
| Gain More than $150,000 | +10 | USSG § 2B1.1(b)(1)(F) |
| Offense Involved ≥ 10 Victims | +2 | USSG § 2B1.1(b)(2)(A)(i) |
| Sophisticated Means | +2 | USSG § 2B1.1(b)(10)(C) |
| Adjustment: | | |
| Obstructing and Impeding the Administration of Justice | +2 | USSG § 3C1.1 |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13.    Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.    Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15.    Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.    The right to persist in a plea of not guilty.

        b.    The right to a speedy and public trial by jury.

        c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

        d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

        e.    The right to confront and cross-examine witnesses against defendant.

        f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

        g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

16.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

17.  Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 30 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $6 million; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended

General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 13 months the USAO gives up its right to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

19.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then: (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL, OR SET-ASIDE</u>

20.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

16

1                      EFFECTIVE DATE OF AGREEMENT

2      21.  This agreement is effective upon signature and execution of

3  all required certifications by defendant, defendant's counsel, and an

4  Assistant United States Attorney.

5                         BREACH OF AGREEMENT

6      22.  Defendant agrees that if defendant, at any time after the

7  Effective Date of this agreement, knowingly violates or fails to

8  perform any of defendant's obligations under this agreement ("a

9  breach"), the USAO may declare this agreement breached.  All of

10 defendant's obligations are material, a single breach of this

11 agreement is sufficient for the USAO to declare a breach, and

12 defendant shall not be deemed to have cured a breach without the

13 express agreement of the USAO in writing.  If the USAO declares this

14 agreement breached, and the Court finds such a breach to have

15 occurred, then: (a) if defendant has previously entered a guilty plea

16 pursuant to this agreement, defendant will not be able to withdraw

17 the guilty plea, and (b) the USAO will be relieved of all its

18 obligations under this agreement.

19     23.  Following the Court's finding of a knowing breach of this

20 agreement by defendant, should the USAO choose to pursue any charge

21 or any civil, administrative, or regulatory action that was either

22 dismissed or not filed as a result of this agreement, then:

23          a.   Defendant agrees that any applicable statute of

24 limitations is tolled between the date of defendant's signing of this

25 agreement and the filing commencing any such action.

26          b.   Defendant waives and gives up all defenses based on

27 the statute of limitations, any claim of pre-indictment delay, or any

28 speedy trial claim with respect to any such action, except to the

extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

24.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to

maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

26.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

27.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

28.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_APS_

_____          December 16, 2022
ADAM P. SCHLEIFER                     _____
Assistant United States Attorney     Date

_____          _____
ADAM LEVN                            Date
Defendant

_____          _____
ROBERT E. DUGDALE                    Date
Attorney for Defendant ADAM LEVIN


CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those

contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____      _____
ADAM LEVIN                            Date
Defendant

### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Adam Levin's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____      _____
ROBERT E. DUGDALE                     Date
Attorney for Defendant Adam Levin

1          <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2      28.  The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
7 CALIFORNIA

8 E. MARTIN ESTRADA
United States Attorney

9

10 _____          _____
ADAM P. SCHLEIFER                         Date
11 Assistant United States Attorney

12 _____          12/16/2024
ADAM LEVN                                 Date
13 Defendant

14 _____          12/16/24
ROBERT E. DUGDALE                         Date
15 Attorney for Defendant ADAM LEVIN

16

17              <u>CERTIFICATION OF DEFENDANT</u>

18     I have read this agreement in its entirety.  I have had enough

19 time to review and consider this agreement, and I have carefully and

20 thoroughly discussed every part of it with my attorney.  I understand

21 the terms of this agreement, and I voluntarily agree to those terms.

22 I have discussed the evidence with my attorney, and my attorney has

23 advised me of my rights, of possible pretrial motions that might be

24 filed, of possible defenses that might be asserted either prior to or

25 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

26 of relevant Sentencing Guidelines provisions, and of the consequences

27 of entering into this agreement.  No promises, inducements, or

28 representations of any kind have been made to me other than those

1  contained in this agreement.  No one has threatened or forced me in

2  any way to enter into this agreement.  I am satisfied with the

3  representation of my attorney in this matter, and I am pleading

4  guilty because I am guilty of the charge and wish to take advantage

5  of the promises set forth in this agreement, and not for any other

6  reason.

7

8  ADAM LEVIN                                    12/16/2024
   Defendant                                     Date

9

10                CERTIFICATION OF DEFENDANT'S ATTORNEY

11      I am Adam Levin's attorney.  I have carefully and thoroughly

12  discussed every part of this agreement with my client.  Further, I

13  have fully advised my client of his rights, of possible pretrial

14  motions that might be filed, of possible defenses that might be

15  asserted either prior to or at trial, of the sentencing factors set

16  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

17  provisions, and of the consequences of entering into this agreement.

18  To my knowledge: no promises, inducements, or representations of any

19  kind have been made to my client other than those contained in this

20  agreement; no one has threatened or forced my client in any way to

21  enter into this agreement; my client's decision to enter into this

22  agreement is an informed and voluntary one; and the factual basis set

23  forth in this agreement is sufficient to support my client's entry of

24  a guilty plea pursuant to this agreement.

25

26  ROBERT E. DUGDALE                             12/16/24
   Attorney for Defendant Adam Levin             Date

27

28

                              21

**EXHIBIT A**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 371: Conspiracy to Tout Securities for Undisclosed Compensation] |
| ADAM LEVIN, | |
| Defendant. | |

The United States Attorney charges:

[18 U.S.C. § 371]

A.   INTRODUCTORY ALLEGATIONS

1.   At times relevant to this Information:

Background

a.   Palm Beach Venture was a subscription investment newsletter operating in Florida, Georgia, and elsewhere.  Palm Beach Venture had subscribers located throughout the United States, including in Los Angeles County, and communicated with those subscribers through interstate wire communications.

b. Palm Beach Venture published promotional pieces for offerings of securities, including securities traded "over-the-counter" ("OTC"), i.e., lower-priced, illiquid securities traded not on public exchanges but instead through "market makers," as well as unregistered securities offered pursuant to Regulation A of the Securities Act of 1933 ("Regulation A"), which permitted the offering and sale of certain securities to the public under more limited disclosure requirements than would traditionally be required for publicly reporting companies.

c. Pursuant to Section 17(b) of the Securities Act of 1933 (15 U.S.C. § 77q(b)), those who received consideration directly or indirectly from an issuer for publishing, giving publicity to, or circulating any advertisement or communication that describes the issuer's security offered for sale were required fully to disclose the consideration received.

d. Subscribers to Palm Beach Venture made up a significant percentage of funds raised through offerings described and promoted by Palm Beach Venture.

Defendant, Conspirators, and Relevant Entities

e. Defendant ADAM LEVIN was a resident of Los Angeles and the founder and Chairman of the Board of Hightimes Holding Corporation ("Hightimes"), a Delaware corporation with a principal place of business in Los Angeles.

f. Hightimes owned and operated High Times, a media company and brand devoted to cannabis and related topics.

g. Hightimes was qualified by the United States Securities and Exchange Commission ("SEC") to conduct a securities offering under Regulation A from March 2018 until June 2020, though

it actually offered securities under Regulation A through December 2022.

h.    Hightimes raised approximately $36,000,000 through its Regulation offering.

i.    Coconspirator Jonathan William Mikula, also known as ("aka") "William Mikula," was a resident of Woodstock, Georgia, and worked as an analyst for Palm Beach Venture.  As an analyst for Palm Beach Venture, Mikula influenced and determined which securities offerings Palm Beach Venture would describe and promote and drafted such descriptions and promotions.

j.    Coconspirator Christian Fernandez, aka "Christian Crockwell," was a resident of Smyrna, Georgia, and a business and personal associate of coconspirator Mikula.

k.    Coconspirator D.L. was an attorney and resident of Ontario, Canada, who, among other overt acts in furtherance of the conspiracy, created and administered a sham entity, 2749960 Ontario LTD, whose purpose was to conduct international financial transactions by which it received the criminal proceeds of the conspiracy in Canada and then forwarded the same to other entities and accounts in Mexico and the United States.

l.    Coconspirator Amit Raj Beri, aka "Raj Beri," was a resident of West Hollywood, California, and Florida, and was Chief Executive Officer ("CEO") of a Delaware corporation with a principal place of business in Beverly Hills, California.

m.    Coconspirator S.B. was a resident of Truckee, California.  Coconspirator S.B. was also the founder and CEO of a Delaware corporation doing business in Miami, Florida; San Mateo, California; and elsewhere (the "Miami Issuer").

3

n.    The Miami Issuer first qualified to conduct a Regulation A offering in or around July 2020 and offered securities under that qualification thereafter in 2020 and 2021.

Promotion of Issuers

o.    Defendant LEVIN, along with coconspirators Mikula, Fernandez, Beri, S.B., and others known and unknown, knew and understood that placement in Palm Beach Venture provided issuers with a valuable avenue of exposure to potential investors.

p.    Palm Beach Venture promoted Hightimes between in or around April 2020 and in or around August 2021.  Hightimes raised at least $20 million in investor funds during that period, with approximately $6 million of that amount associated with Palm Beach Venture's promotion.

q.    Palm Beach Venture promoted the Miami Issuer on or around September 8, 2020, which promotion resulted in raising approximately $30 million in investor funds.

B.    OBJECT OF THE CONSPIRACY

2.    Beginning no later than in or about February 2020, and continuing through at least in or about August 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant LEVIN, along with coconspirators Mikula, Fernandez, Beri, D.L., conspired with one another and others known and unknown, knowingly and willfully, by the use of the means and instruments of transportation and communication in interstate commerce, to commit an offense against the United States, namely, to publish, give publicity to, and circulate notices, circulars, advertisements, articles, letters, investment services, and communications which, though not purporting to offer securities for sale, described such securities

4

for a consideration received and to be received, directly and indirectly, from issuers without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof, in violation of Title 15, United States Code, Sections 77q(b) and 77x.

C.   MANNER AND MEANS OF THE CONSPIRACY

3.   The object of the conspiracy was carried out, and was to be carried out, in substance, as follows:

a.   Knowing that placement within and promotion by Palm Beach Venture permitted securities issuers to reach additional investors and raise additional funds, and knowing that Palm Beach Venture would make the materially misleading representation that neither it "nor its affiliates receive compensation for bringing this deal to you," coconspirator Mikula would agree to write and place articles and other promotional pieces regarding the securities of specific issuers (the "Collusive Issuers") on the understanding and agreement that such issuers and their associates would pay undisclosed direct and indirect compensation to him, coconspirators Fernandez, Beri, D.L., and others.

b.   In exchange for coconspirator Mikula's promotion and touting of Hightimes and its Regulation offering through Palm Beach Venture, defendant LEVIN would pay and cause Hightimes to pay $150,000 in undisclosed compensation to coconspirators Mikula, Fernandez, Beri, D.L., and others.

c.   In exchange for coconspirator Mikula's promotion and touting of the Miami Issuer and its Regulation offering through Palm Beach Venture, coconspirator S.B. would pay and cause the Miami

Issuer to pay undisclosed compensation to coconspirators Mikula, Fernandez, Beri, D.L., and others.

      d.   To promote the conspiracy and disguise the source, purpose, and nature of the illegal payments, defendant LEVIN, along with coconspirators Mikula, Beri, D.L., S.B., and others, would arrange for coconspirators Fernandez, Beri, and D.L. to receive compensation on coconspirator Mikula's behalf.  Coconspirators Fernandez and D.L. would then transfer those funds through a series of domestic and foreign bank accounts before returning a portion of the funds to coconspirator Mikula through nominee bank transactions, cash withdrawals, disguised check payments and wire transfers, and gifts, including luxury items such as a Range Rover automobile.

      e.   Coconspirators Fernandez, D.L., and others would open, form, and operate a series of domestic and foreign business entities and bank accounts for the purpose of receiving the payments generated by the conspiracy and concealing the nature, location, source, ownership, and control of those payments.  In exchange, coconspirator Fernandez would take a significant percentage -- sometimes half -- of these funds.

      f.   Also in exchange for coconspirator Mikula's touting of Hightimes through Palm Beach Venture, defendant LEVIN would provide additional undisclosed and indirect compensation in the form of lavish meals, beverages, and entertainment worth tens of thousands of dollars to coconspirators Mikula, Fernandez, Beri, and others.

    4.   Defendant LEVIN was able to raise approximately $6 million of investor funds through securities offerings described and promoted by Palm Beach Venture without required disclosures that such

promotions had been obtained through direct and indirect compensation to coconspirator Mikula and others.

D.   OVERT ACTS

5.   On or around the dates set forth below, in furtherance of the conspiracy, and to accomplish its object, defendant LEVIN, together with coconspirators Mikula, Fernandez, Beri, D.L., S.B., and others, committed and willfully caused others to commit, the following overt acts, among others, within the Central District of California and elsewhere:

Overt Act No. 1:   On April 3, 2020, defendant LEVIN and coconspirator D.L. entered into a "Marketing Agreement" by which "2749960 Ontario Ltd." purported to agree to provide "marketing services to Hightimes Holding Corp."

Overt Act No. 2:   On April 6, 2020, in consideration for the funds defendant LEVIN had committed to funnel through coconspirators Fernandez, Beri, D.L., and others to coconspirator Mikula, coconspirator Mikula caused Palm Beach Venture to promote Hightimes's Regulation A offering, which promotion included the materially false representation that "Neither the Palm Beach Research Group nor its affiliates receive compensation for bringing this deal to you."

Overt Act No. 3:   On August 30, 2020, in a text message, coconspirator Fernandez informed defendant LEVIN of "another push" for Hightimes in Palm Beach Venture, with "September 7th" as the targeted date, to which defendant LEVIN responded, "Yesss."

Overt Act No. 4:   On August 31, 2020, in response to coconspirator Fernandez's request that defendant LEVIN wire funds in consideration for the upcoming promotion of Hightimes, defendant LEVIN text-messaged a screenshot of a bank confirmation for an

7

international bank wire of $100,000 from an account controlled by
defendant LEVIN in the United States to a bank in Ontario, Canada.

Overt Act No. 5:   On September 2, 2020, in a text message,
coconspirator Fernandez wrote to defendant LEVIN, "Amigo you owe $150
not $100 Porfavor It's almost 7th."

Overt Act No. 6:   On September 3, 2020, after additional text
messages between coconspirator Fernandez and defendant LEVIN about
whether defendant LEVIN's wire for $100,000 into an account in
Ontario, Canada, had cleared, defendant LEVIN sent coconspirator
Fernandez an additional text-message verification of that bank wire,
to which coconspirator Fernandez responded, "Once is clear I will
tell them the green light for Hightimes push."

Overt Act No. 7:   On September 3, 2020, in consideration for
Palm Beach Venture's promotion of Hightimes, defendant LEVIN caused
Hightimes to wire $100,000 to 2749960 Ontario Ltd.

Overt Act No. 8:   On September 22, 2020, in a text message
exchange, coconspirator Fernandez told defendant LEVIN, "We are
writing about cannabis this week an update and we want HT to be part
of this as recommended for the readers.  Once [your payment] clears
I'll let you know," to which defendant LEVIN responded, "K," and
then, after coconspirator Fernandez confirmed "funds seem reflected,"
defendant LEVIN responded, "Yessss."

Overt Act No. 9:   On September 22, 2020, defendant LEVIN
caused Hightimes to wire $25,000 to 2749960 Ontario Ltd. in
furtherance of the criminal conspiracy and in consideration for Palm
Beach Venture's promotion of Hightimes.

Overt Act No. 10:   On September 23, 2020, coconspirator Mikula
caused Palm Beach Venture to promote the Hightimes's Regulation A

8

1  offering, which promotion included the materially false

2  representation that "Neither the Palm Beach Research Group nor its

3  affiliates receive compensation for bringing this deal to you."

4      <u>Overt Act No. 11:</u>   On October 16, 2020, in consideration for

5  Palm Beach Venture's promotion of Hightimes, defendant LEVIN caused

6  Hightimes to wire $25,000 to 2749960 Ontario Ltd.

7

8                                    E. MARTIN ESTRADA
                                     United States Attorney
9

10

11                                   LINDSEY GREER DOTSON
                                     Assistant United States Attorney
12                                   Chief, Criminal Division

13                                   BRETT A. SAGEL
                                     Assistant United States Attorney
14                                   Chief, Corporate and Securities
                                       Fraud Strike Force
15
                                     ALEXANDER B. SCHWAB
16                                   Assistant United States Attorney
                                     Deputy Chief, Corporate and
17                                     Securities Fraud Strike Force

18                                   ADAM P. SCHLEIFER
                                     Assistant United States Attorney
19                                   Corporate and Securities Fraud
                                       Strike Force
20

21

22

23

24

25

26

27

28