UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION - LOS ANGELES

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. ADAM LEVIN, Defendant. | Case No. CR 24-754-SB<br>Los Angeles, California<br>Tuesday, February 11, 2025<br>11:00 A.M. to 11:31 A.M. |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE STANLEY BLUMENFELD, JR.
UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Appearances: | See Page 2 |
| Deputy Clerk: | Lynnie Fahey |
| Court Reporter: | Recorded; CourtSmart |
| Transcription Service: | JAMS Certified Transcription<br>16000 Ventura Boulevard #1010<br>Encino, California 91436<br>(661) 609-4528 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES:

For the Plaintiff: United States Attorney's Office
Central District of California
Major Frauds Section
By: ADAM P. SCHLEIFER
312 North Spring Street, Suite 1100
Los Angeles, California 90012
(213) 894-4849
adam.schleifer@usdoj.gov

For the Defendant: Kendall Brill and Kelly LLP
By: JEFFREY M. CHEMERINSKY
10100 Santa Monica Boulevard
Suite 2500
Los Angeles, California 90067
(310) 272-7929
jchemerinsky@bkbkfirm.com

Kendall Brill and Kelly LLP
By: ROBERT E. DUGDALE
10100 Santa Monica Boulevard
Suite 2500
Los Angeles, California 90067
(310) 272-7904
rdugdale@kbkfirm.com

LOS ANGELES, CALIFORNIA, TUESDAY, FEBRUARY 11, 2025, 11:00 A.M.

JEFFREY M. CHEMERINSKY: -- Chemerinsky on behalf of the Defendant Adam Levin, who's present in court.

THE COURT: Good morning. Please be seated.

And this matter is before me with regard to a change of plea. First of all, let me indicate that I have received and reviewed the Information in this matter, which is found at Docket No. 1. I also have received and reviewed the Plea Agreement, which is found at Docket No. 8. There also is a waiver of indictment, which I have reviewed, which is found at Docket No. 12.

Let me confirm first with Government counsel, Mr. Schleifer, that the Court is correct that the parties have entered into a Plea Agreement, which is found in -- at Docket No. 8 and that the Government has not made any promises upon which Mr. Levin can rely outside the four corners of that Plea Agreement.

ADAM P. SCHLEIFER: That is correct, Your Honor.

THE COURT: All right. And incidentally, unless I direct the parties to go to the lectern, you're to remain seated, speak into the microphone, and this applies to all sides -- as well as to Mr. Levin.

And so Mr. -- it's Dugdale? (Pronouncing.)

ROBERT E. DUGDALE: It's Dugdale, Your Honor, yes.

THE COURT: So your client does wish to enter into

this Plea Agreement? You've gone through it thoroughly with him?

MR. DUGDALE: We have, Your Honor, and he does.

THE COURT: All right.

Mr. Levin, is that correct, sir?

THE DEFENDANT: Yes, sir. Yes, Your Honor.

THE COURT: First order of business is I'm going to have you raise your right hand. You can remain seated. We're going to have you sworn in.

ADAM LEVIN, DEFENDANT, SWORN

THE CLERK: Thank you. You may lower your hand.

THE COURT: And, Mr. Levin, I'm sure you're aware of this, especially given your discussions with counsel, but you understand the oath you've taken is an oath to tell the truth to the Court. I'm going to be asking you a number of questions. It's vitally important that you provide me with truthful and accurate information, and if you fail to do so, you try to knowingly mislead or deceive me in your responses, that is a crime. It's called "perjury" for which you can be separately prosecuted. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that I'm going to be asking you questions, and if at times you don't understand what I'm asking, you have any questions, you have the right to speak with your lawyers confidentially. You

just need to let me know that you need to do so. Otherwise, I'm going to assume that you understand fully the questions I'm asking you and your answers are truthful and appropriately responsive. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Tell me your true, full name, please, Mr. Levin.

THE DEFENDANT: Adam Ezra Levin.

THE COURT: Is it "Ezriel" or "Israel"?

THE DEFENDANT: Ezra.

THE COURT: Ezra.

THE DEFENDANT: E-z-r-a.

THE COURT: And what is your date of birth, Mr. Levin?

THE DEFENDANT: April 5, 1979.

THE COURT: And let me turn to Mr. Dugdale. First of all, no one has communicated to you any promises that you have communicated to your client other than the written Plea Agreement; is that correct?

MR. DUGDALE: That is correct, Your Honor.

THE COURT: And also, you have certified certain information to the Court, which I assume you've gone over with your client and all of the information in the certification. I'm not recalling off the top of my head whether it was you or some other lawyer, but were you the

lawyer who certified?

MR. DUGDALE: I was, Your Honor. I have the Plea Agreement in front of me. It's page 21. Yes, Your Honor.

THE COURT: And you in fact certified certain information? All that information is true and correct?

MR. DUGDALE: It is, Your Honor.

THE COURT: All right. And you've had enough time to go through the case, the potential evidence and defenses with your client and have spoken to him at length about his statutory and constitutional rights, as well as the factual basis that is set forth in the Plea Agreement?

MR. DUGDALE: We have, Your Honor.

THE COURT: All right.

Now, turning to you, Mr. Levin, is everything that your counsel just represented to the Court true and correct as far as you're -- you know?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And I do want to have you turn to the signature that you provided to the Court on the Plea Agreement, which is found on page, I believe, 20 -- page 20. Is that your signature that appears on that page?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you also appear to have signed the portion of the document just on that and that next page --

your signature appears on the next page under "Certification of Defendant." Is that also true and correct -- all of the information in the certification?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And so I'm just going to briefly summarize what's contained in the certification to make sure that everything is true and correct.

So first of all, Mr. Levin, you have had enough time to review the Plea Agreement and also to discuss this case, as well as the contents of the Plea Agreement, with your counsel?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And to the extent that you had any questions or have any questions about the Plea Agreement and its contents, you asked that of your lawyer -- or lawyers and they've answered those questions to your satisfaction?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you also understand and have gone through with your lawyers the potential evidence that may be presented in this case by the Government, all of your rights as more fully set forth in the Plea Agreement, as well as potential defenses that you might assert if you were to go to trial, including before trial or at trial filing various motions on your own behalf? Did you go through that in detail with your lawyers?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you also discussed sentencing considerations, which I'll address in more detail in a little bit; is that true as well?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also have represented to the Court that you're fully satisfied with both the quantity and the quality of representation that you have received from your lawyers. Is that also fully accurate?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And has anyone made any promises to you to get you to enter into this agreement other than the promises that are set forth in the Plea Agreement itself?

THE DEFENDANT: No, Your Honor.

THE COURT: And by "the Plea Agreement itself," you understand I'm referring to the written document that's currently before you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And has anyone threatened you or anyone close to you to get you to enter into this agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: So am I correct that essentially you went through a process of you were fully advised, fully discussed with your lawyers the case, the defenses, the potential evidence; you took a look at the Plea Agreement;

you went through the Plea Agreement; you weighed whether to go to trial and challenge the case knowing that the Government has the burden of proof, you have no burden, versus any benefits that you may have from the Plea Agreement; and you've decided; on balance; it's in your best interest to waive your rights to a trial and to enter into this agreement? Is that all true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, you also have agreed, as I mentioned, to waive the right for the Government to proceed to an indictment. So you do have the right to have the Government go to a grand jury and see if they can demonstrate that there's probable cause to hold you to answer for trial, and you've waived that right, and do you continue to waive that right as you have done in Docket No. 12?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also, my understanding is you're waiving your right to have me read the Information to you since you're fully familiar and have gone through that with your lawyers; is that also true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you do understand that you're charged in that Information in Count 1 with a felony for conspiracy to tout securities for an undisclosed -- for undisclosed compensation in violation of 15 U.S.C. Section

77q(b) and 77x? You understand that's the -- well, strike that.

That's a violation, I should say, of 18 U.S.C. Section 371. So it's -- the ultimate charge, as stated in the Information, is conspiracy to tout securities for an undisclosed compensation, which violates various laws that I mentioned, but the ultimate crime itself was a violation of 18 U.S.C. Section 371. You understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you understand the various elements of the offense as set forth in the Plea Agreement; is that true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I am going to read those to you just to remind you of that. So, if you wish to read along, it's on page 4 through page 5.

And in order for the Government to prove the conspiracy that I just mentioned, the Government would have to prove the following beyond a reasonable doubt -- and when I say they have to prove something "beyond a reasonable doubt," I mean they have to prove every single element beyond a reasonable doubt, and here are the elements: a, there was an agreement between two or more persons willfully to violate 15 U.S.C. Section 77q(b), that is, to describe a security offered for sale without disclosing the receipt of

compensation from the issuer of that security; b, defendant became a member of that conspiracy knowing of its object and intending to help accomplish it, and; c, one of the members of the conspiracy performed at least one overt act for the purpose of carrying it out.

The elements of the underlying crime that was the object of the conspiracy that is 15 U.S.C. Section 77q(b), 77x are as follows: a, description of a security in any communication or publication; b, use of the means or instruments of transportation or communication in interstate commerce or the mail to describe such security; c, receipt of consideration directly or indirectly for describing such security; d, willful failure to disclose fully the receipt and amount of any consideration.

Do you understand the elements that the Government must prove beyond a reasonable doubt in order to obtain a conviction against you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you also understand that you have set forth -- through your lawyers, but ultimately this is on you -- you're owning it if it's true -- the factual basis, which is a several page statement of facts that you are agreeing to which add up to, essentially, that you've committed the crime for which you are charged in the Information? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And I do not intend, Mr. Schleifer, to go through and read all of these pages of the factual basis. If you believe that you need to do so, I'll give you that opportunity.

But let me just go through to satisfy myself that you fully understand what's in this factual basis and have no objection, no disagreements with it.

First of all, I want you to just take a look with me at the factual basis, which starts on page 7 under "Factual Basis," beginning with paragraph 10, and the facts themselves really commence on line 15 beginning "No later than."

First of all, did you read through that page of the factual basis very carefully?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And same question with regard to the next page. On page 8, the factual basis continues. Did you read that page word for word just as you did the previous page?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand everything that is contained on page 8 just as you understood everything that was contained on page 7?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Same questions that I've asked you -- I'm going to ask you the same question for page 9. Is that true of page 9 as well?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Same question for page 10.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Same question for page 11.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Same question for page 12.

THE DEFENDANT: Yes, Your Honor.

THE COURT: And also just spilling over to a couple of lines in page 13. Same answer to all my questions?

THE DEFENDANT: Yes, sir.

THE COURT: And have you had enough time to read through and consider carefully every single word that is contained in the factual basis?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you agree with the factual basis word for word, both in terms of its truthfulness as well as its accuracy, meaning that it is a true statement of facts and an accurate statement of facts as set forth in the factual basis?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any disagreement or objection to any of the facts that are set forth in the

factual basis?

THE DEFENDANT: No, Your Honor.

THE COURT: And let me ask Mr. Dugdale whether you have carefully gone through the factual basis word for word with your client.

MR. DUGDALE: We have, Your Honor.

THE COURT: And are you fully satisfied based upon your investigation of the facts, including, but not limited to, any discussions you've had with your client, as well as other factual investigation, that this is an appropriate and accurate factual basis that belongs in this Plea Agreement?

MR. DUGDALE: It is, Your Honor.

THE COURT: Let me see, Mr. Schleifer, whether you're satisfied, or do you want to read it through?

MR. SCHLEIFER: Your Honor, I'm satisfied, but given my expectation that some of this will become quite salient in potential future proceedings, if I could just read essentially a page or so of the most salient aspect if the Court is okay with that?

THE COURT: I am.

MR. SCHLEIFER: Okay. So --

THE COURT: Just identify where you're reading from.

MR. SCHLEIFER: Very well, Your Honor.

So at the first full paragraph on page 9, I will

ask whether Mr. Levin agrees and accepts the following: that Palm Beach Venture promoted Hightimes between in or around April 2020 and in or around August 2021, and during that promotion period Hightimes raised approximately $20 million from more than ten investor victims with at least 6 million in investment proceeds associated with Palm Beach's -- Palm Beach Venture's promotion of Hightimes.

And knowing that placement within and promotion by Palm Beach Venture permitted issuers to raise additional investors -- excuse me -- to reach additional investors and raise additional funds, defendant conspired with Messrs. Mikula, Fernandez, Beri, and D.L. to pay $150,000 in undisclosed compensation to those coconspirators so that Mikula would cause Hightimes to be promoted in Palm Beach Venture. For the same reason and to achieve the same ends, defendant paid for tens of thousands of dollars of entertainment expenses in the form of boat rentals, food, and alcohol, and other sundry services lavished upon Mikula, Fernandez, Beris -- excuse me -- Beri and others.

Coconspirator D.L. was an attorney and resident of Ontario, Canada, who created and administered a sham entity, No. 2749960 Ontario Ltd., whose purpose was to conduct international financial transactions by which it received the criminal proceeds of the conspiracy in Canada. Coconspirator Beri was a resident of West Hollywood, California, and

Florida and was a chief executive officer of a Delaware corporation with a principal place of business in Beverly Hills, California. And Coconspirator S.B. was a resident of Truckee, California, and the founder and CEO of a Delaware corporation doing business in Miami, Florida, and San Mateo, California, and elsewhere known as the, quote, "Miami issuer," end quote, and in exchange for undisclosed compensation S.B. willfully -- excuse me. In exchange for undisclosed compensation willfully arranged by Coconspirator S.B., Palm Beach Venture promoted the "Miami issuer."

And to conceal the nature of the conspiracy and promote its object, defendant also employed sophisticated means, including by entering into a sham, quote, "marketing agreement," unquote, with Coconspirator D.L. and routing defendant's undisclosed payments through a Canadian bank account and to a Canadian shell corporation.

So that would be the portion I would read with one more additional brief portion at the bottom of 12 and into pages -- page 13, which is that defendant admits that he provided false testimony to the SEC in connection with its civil enforcement investigation into the same conduct to which defendant is agreeing to plead guilty.

And then specifically, as it says at the bottom of page 12, defendant previously falsely testified when asked, "Was it a pay-to-play arrangement?" and answered willfully,

materially, falsely, quote, "I actually never, you know, understood there was a pay-to-play arrangement," and by entering into this agreement, Mr. Levin acknowledges that that testimony was willfully and materially false at that time.

So the Government would ask if Mr. Levin heard the Government's reading of that and specifically agrees to those portions of the Plea Agreement.

THE COURT: So, Mr. Levin, you've already agreed to the entirety, and that contains a portion of it. Do you agree that -- with both the entirety which also includes, specifically, the portion that Mr. Schleifer just read to you?

THE DEFENDANT: Yes, sirs. Yes, Your Honor.

And, yes, Mr. Schleifer.

THE COURT: And do you have any disagreement or objection to the truthfulness and accuracy -- or the accuracy, I should say, of the portion that Mr. Schleifer just read to you?

THE DEFENDANT: No, Your Honor.

THE COURT: And you do understand that the maximum sentence that you're facing for this crime is five years in custody followed by three years of supervised release, a maximum fine of $250,000 or twice the gain or loss. There's also a mandatory special assessment of a hundred dollars,

along with victim restitution as described in the Plea Agreement. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you have had a chance to discuss sentencing guidelines and how they might apply in this case with your counsel?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that the Court is going to order a Presentence Report, you'll be subject to an interview, that you'll receive a copy of the Presentence Report and be ordered to read it and to discuss it with your lawyer. Also, the Court will look at the Presentence Report as it might be revised? I will take into account your counsel's recommendation as to what an appropriate sentence should be. I'll also consider the Government's position. I'll consider the Sentencing Guidelines, but I'm not bound by them. I can vary up or down. I just can't go below any mandatory minimum or any maximum -- statutory maximum sentence. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I'll also take into account statutory factors. I think you were here in the previous proceeding; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: And you heard me go through those

statutory factors in some detail; is that right?

THE DEFENDANT: Yes, sir.

THE COURT: I'll take those into account in your case as I have to in every single case. You understand that?

THE DEFENDANT: Yes, sir. Yes, Your Honor.

THE COURT: Do you also understand that while your lawyers can provide to you what they believe would be a reasonable sentence, they can't guarantee you anything? And you can't rely upon what they say in deciding whether you want to enter into this agreement because I am free to vary, as I said, below or above the guideline sentence. I simply can't go below any floor -- I don't believe there's a floor here, but if there were, can't go below a floor. There's always a ceiling. I can't go below the -- above the ceiling at five years and three years' supervised release. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And also, do you understand that, if you ultimately are unhappy with the Court's sentence or for any reason if you decide to change your plea here and I find you guilty, you can't just withdraw your plea -- or ask me to withdraw your plea because you had a change of heart or because you don't like the sentence. Do you understand that as well?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also understand that supervised release, if you're placed on it, is a period of supervision where the Probation Department will work with you, they will supervise you, you'll have certain conditions that you have to abide by, and if you violate any of the terms and conditions of supervised release, you can be returned to custody, if there's a custodial sentence, for a period of time. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also understand, as more fully described in the Plea Agreement, that you have important constitutional rights. They include the right to be represented by counsel, and if you can't afford counsel, I will appoint one for you. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that if you're concerned about the cost of retained counsel and you really want to go to trial but you're concerned about the mounting legal bills that's not a basis to enter into a plea agreement.? You can tell me that you can't afford or you're concerned financially about affording it, and as I'm sure your lawyers will tell you, we have excellent federal public defenders and other lawyers who can represent you free of charge if you qualify. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that you have the right to maintain your innocence? This means you can persist in pleading not guilty and go to trial. And you have the right to a jury or a court trial. The difference between the two, as you know, a jury, you have a jury; court, it's just me making the decision. If you elect to have a jury trial, that's a trial by 12 members of the community who are selected by a fair cross-section of the community.

And at trial, whether it's a jury or a court trial, you have a number of important constitutional rights. That includes the right to confront all evidence presented against you, including cross-examining witnesses and other evidence that may be presented at trial. You also have the right to be present, to remain silent, and not incriminate yourself. The burden of proof is solely on the shoulders of the Government, and it's a very high burden. It's called "beyond a reasonable doubt." You have no burden at trial. So you can remain silent. You don't have to call witnesses. You don't have to even cross-examine witnesses or evidence if you don't want to. On the other hand, you can do so. So you can -- if you wanted to present your own evidence, you can do so by waiving your right to testify and you can testify and/or you can call witnesses and bring in other evidence, including documents, using the subpoena power of the court at no charge to yourself.

Do you understand all of those rights?

THE DEFENDANT: Yes, Your Honor.

THE COURT: With that understanding, do you give up or waive the right that you have to and at a speedy and public jury or court trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also, I'm required to advise you of some collateral consequences that flow from a felony conviction, and that includes that, if you're not a U.S. citizen, you can expect to be deported, be removed from the United States, denied admission or readmission into the United States, and denied any application for U.S. citizenship.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You're currently -- if you're currently on any type of post-conviction supervision -- by that I mean probation, parole, supervised release, post-release community supervision, mandatory supervision, or anything of the sort -- you can expect that a term and condition of such supervision is you obey all laws; therefore, you likely violated the terms and conditions and can be separately sanctioned in any such case.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also, you will be convicted as a felony -- as a felon, and therefore, as a felon you will lose certain rights of citizenship, and they include the right -- or may include the right to vote, the right to be a juror, the right to hold public office. As a convicted felon, you will certainly lose the right to own, use, possess, have custody or control knowingly of firearms, ammunition, or ammunition-loading devices. Also, there's a forfeiture -- or loss, I should say, of potential Government benefits as set forth in the Plea Agreement.

Do you understand that as well?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also have agreed to a waiver of certain appellate rights, and I am going to review that with you. Specifically, on page 15, paragraph 16 states that: Defendant understands that with the exception of an appeal based on a claim that defendant's plea of guilty was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction of the offense to which defendant is pleading guilty. Defendant understands that this waiver includes but it's not limited to arguments that the statute to which defendant is pleading guilty is unconstitutional and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

Understood and agreed, Mr. Levin?

THE DEFENDANT: Yes, sir.

THE COURT: It goes on to state in paragraph 17: Defendant agrees that provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 30 months, defendant gives up the right to appeal all of the following: a, the procedures and calculations used to determine and impose any portion of the sentence; b, the term of imprisonment imposed by the Court; c, the fine imposed by the Court provided it is within the statutory maximum; d, to the extent permitted by law, the constitutionality or legality of defendant's sentence provided it is within the statutory maximum; e, the amount and terms of any restitution order provided it requires payment of no more than $6 million; f, the term of probation or supervised release imposed by the Court provided it is within the statutory maximum, and; g, any of the following conditions of probation or supervised release imposed by the Court, namely, the conditions set forth in the Second Amended General Order 20-04 of this court, the drug-testing conditions mandated by law, and the alcohol- and drug-use conditions authorized by law.

Do you understand and agree to that as well?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions, Mr. Levin,

that you wish to ask of the Court or you wish to ask confidentially of your counsel before I continue?

THE DEFENDANT: No, sir. No, Your Honor.

THE COURT: And have you understood everything that has gone on here so far this morning?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And are you able to make a decision that you believe is in your best interest here this morning?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is there anything affecting your ability to do so?

THE DEFENDANT: No, Your Honor.

THE COURT: I'll give you solely by way of example how your decision-making capacity might be affected, and if it is, you should disclose that to me: You've taken some kind of medication, controlled substance, alcohol, even prescribed medication that is affecting your ability to think clearly and to render your best judgment here this morning.

Is there anything at all that's happening, including but not limited to that, that I should be aware of before I take your plea?

THE DEFENDANT: No, Your Honor.

THE COURT: Anything, Mr. Schleifer, the Government wishes to review before I take the plea?

MR. SCHLEIFER: No, Your Honor.

THE COURT: Anything, Mr. Dugdale, that you'd like the Court to review with your client before I take his plea?

MR. DUGDALE: No, Your Honor.

THE COURT: Then, Mr. Levin, you are charged as indicated in the Information in Count 1 with a felony for conspiracy to tout securities for an undisclosed compensation in violation of 18 U.S.C. Section 371, a felony.

How do you wish to plead to the charge?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: And are you pleading guilty because in fact you committed the charged acts as set forth in the factual basis of the Plea Agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Dugdale, do you join in the waivers, concur in the plea, and stipulate that there is indeed a factual basis as set forth in the Plea Agreement?

MR. DUGDALE: I do, Your Honor.

THE COURT: I find the plea and waivers have been made knowingly, intelligently, voluntarily, and freely, free of any promises made outside the four corners of the Plea Agreement, free of any threats, also voluntarily after speaking with his counsel and weighing the pros and cons of going to trial or waiving his right to trial. I make that determination based not only upon my review of the documents in -- on the docket in this case but also my careful inquiry

of Mr. Levin and my careful viewing of him during the Court's colloquy, and I'm fully satisfied that it's a knowing and voluntary and free waiver of his constitutional rights.

I therefore am finding him guilty on Count 1, I'm accepting the Plea Agreement, incorporating it into the proceedings, and I will set sentencing on May 20 of this year at 8:00 a.m. subject to hearing from the parties, and I'm also vacating all dates that remain other than the sentencing date that I finally set as it applies to this defendant only.

Mr. Schleifer, you wish to be heard on the date?

MR. SCHLEIFER: Yes. Briefly, Your Honor.

Given the sentencings in July as to three other defendants in a related matter -- that this Court has found related, the Government would suggest that sentencing in this matter occur either on the final date of that trio of sentencings, which is currently set for July 29, 2025, or thereafter, and the parties have both confirmed that August 26, 2025, would work.

I also want to flag for the Court -- the Government is very mindful of the Court's hesitation, as a general matter, to extend and, also, continue sentencings. That said, there -- the Government does hope and expect that there may be other cases filed related to this one and that other case that may -- if it results in a trial, might bring the parties back to seek a continuance of this sentencing.

THE COURT: All right. I'll hear from the defense, if you wish to be heard, but I will sentence this matter, instead, on July 29 subject to a potential continuance for good cause, and certainly, if there's a need for him to participate in future proceedings, that very highly, likely will result in good cause.

Do you wish to be heard, Mr. Dugdale?

MR. DUGDALE: No, Your Honor. I suspect we would know by July 29th whether that would be necessary or not, Your Honor.

THE COURT: All right. So July 29th it is, and this will be at 8:00 o'clock.

And the Government is asking the Court to make the necessary findings and agrees to allow Mr. Levin to remain out on bound subject to conditions?

MR. SCHLEIFER: That is correct, Your Honor.

THE COURT: And that is, of course, the request, Mr. Dugdale, of your client?

MR. DUGDALE: It is, Your Honor.

THE COURT: I find clear-and-convincing evidence that Mr. Levin shall remain out on bond subject to the current bond conditions because he does not present either a flight risk or a risk to public safety if he so remains out on custody.

Mr. Levin, it is important that you comply not only

with all your bond conditions but also all orders of the court.

You are ordered to be here for sentencing on the date I've just indicated -- the July date I've just indicated, which is July 29, at 8:00 a.m., and if your lawyers tell you that date has been continued, the only way that you are not to be here on July 29 is if you receive a written notification -- it could be by email -- that you will keep and so will your lawyers to show me that your lawyers in fact notified you of a continuance of the sentencing. Otherwise, if the matter has not been continued and I call this matter on July 29th and you're not here, I am going to issue a bench warrant for your arrest.

Do you understand that?

THE DEFENDANT: That will not happen, Your Honor.

THE COURT: I'm expecting it's not, but just so that you're fully apprised.

With that, unless there's anything further, this matter is concluded.

MR. DUGDALE: Thank you, Your Honor.

MR. SCHLEIFER: Thank you, Your Honor.

THE DEFENDANT: Thank you, Your Honor.

THE COURT: This matter is concluded, and we will take a brief recess. I know we still have that civil matter, and we'll get to that in a little bit. We're in recess.

THE CLERK: All rise.

(Proceedings adjourned at 11:31 a.m.)

///

///

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Julie Messa
Julie Messa, CET**D-403
Transcriber

April 10, 2025
Date