TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
DAVID C. LACHMAN (Cal. Bar No. 261711)
Assistant United States Attorney
Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-5564
Facsimile: (213) 894-2927
E-mail: david.lachman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ADAM LEVIN,<br><br>Defendant. | No. 2:24-CR-00754-SB<br><br><u>GOVERNMENT'S REVISD SENTENCING POSITION FOR DEFENDANT ADAM LEVIN</u><br><br>Sentencing Date: July 28, 2026<br>Hearing Time: 8:00 am<br>Location: Courtroom of the Hon. Stanley Blumenfeld Jr. |

Plaintiff United States of America, by and through its counsel of record, the Acting Attorney General, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney David C. Lachman, hereby files its revised sentencing position for defendant Adam Levin.

//

//

The government's revised sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report, and any other evidence or argument that the Court may permit.

Dated: July 23, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Assistant United States Attorney
Chief Assistant United States Attorney &
Chief, Criminal Division

/s/
DAVID C. LACHMAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendant Adam Levin is before the Court for sentencing following his guilty plea to a single-count Information charging Conspiracy to Tout Securities for Undisclosed Compensation, in violation of 18 U.S.C. § 371 and 15 U.S.C. §§ 77q(b) and 77x. The United States Probation and Pretrial Services Office ("USPPO") calculated a total offense level of 17 and a Criminal History Category of I, yielding an advisory range of 24 to 30 months. (PSR ¶¶ 41–53, 109.) The USPPO recommends 24 months' imprisonment, three years' supervised release, restitution of $143,537, and no fine. On April 21, 2026, the government recommended a low-end sentence of 24 months. (Dkt. 58.)

The government now withdraws and revises that recommendation. Two things have changed. First, on April 16, 2026—two days after the PSR issued—the U.S. Sentencing Commission promulgated an amendment to the loss table at U.S.S.G. § 2B1.1(b)(1), effective November 1, 2026, that will reduce similarly situated defendants' offense level by two levels.[1] Second, on further review of the record, developed in part through meetings with defendant's new counsel,[2] the government has concluded that defendant's role was meaningfully different in kind, and not merely in degree, from that of his three co-conspirators. In conjunction with his personal characteristics, including post-offense rehabilitation, the government asks the Court to vary downward an additional four levels to a total offense level of 11, with a resulting Guidelines range of 8

---

[1] *See* U.S. Sentencing Commission, Amendments to the Sentencing Guidelines, at 13-14, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202605_Amendments.pdf.

[2] The Court approved the substitution of Nicholas Smith as defendant's counsel on April 30, 2026. (Dkt. 68.)

to 14 months, which corresponds to Zone B of the Sentencing Table. *See* U.S.S.G. Ch. 5, Pt. A; § 5C1.1(c)(3).[3]

The government respectfully recommends that the Court impose: (1) a term of twenty-four months' probation, subject to a condition of eight months' home detention with location monitoring at defendant's expense; (2) a fine of $180,000; (3) restitution of $143,537; and (4) the mandatory $100 special assessment. Such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

## II. FACTUAL BACKGROUND

Defendant's offense conduct is fully summarized in paragraphs 13 to 28 of the PSR. The government agrees with the PSR's recitation of the facts, which is also consistent with the stipulated factual basis contained in paragraph 10 of the Plea Agreement. (Dkt. 8 ("Plea Agmt.") ¶ 10.)

## III. GUIDELINES CALCULATION

As set forth in the government's prior submission, the USPPO correctly calculated that defendant's total offense level is 17, which conforms to the parties' agreement in the plea agreement. (Plea Agmt. ¶ 12.) As relevant here, the total offense level included enhancements of +10 for a gain exceeding $150,000 but less than $250,000 under § 2B1.1(b)(1)(F);[4] +2 for sophisticated means under § 2B1.1(b)(10)(C); and −2 as a zero-point offender under § 4C1.1.

On April 16, 2026, days after the PSR issued, the U.S. Sentencing Commission voted unanimously to promulgate a package of amendments, which will go into effect on November 1, 2026, absent congressional action. Among them is an inflationary

---

[3] The government apologizes for the belated submission of its revised sentencing position, which reflects the government's recent consideration of additional information relevant to sentencing. Both parties are prepared to proceed on July 28, 2026. Should the Court find additional time useful to consider the parties' revised positions, however, defendant has indicated that he is amenable to a continuance of the sentencing date, which the government would not oppose.

[4] The PSR fixes defendant's gain at $180,000: $150,000 in direct payments plus approximately $30,000 in entertainment compensation. (PSR ¶¶ 38, 41(c).)

adjustment to the § 2B1.1(b)(1) loss table, the first in more than a decade. Under the amended loss table, a gain of more than $150,000 but less than $200,000 will result in an 8-level increase, not 10 levels. The government agrees with defendant that the Court should account for the impending amendment to the loss table, but not on its own force. *See* U.S.S.G. § 1B1.11(a). Rather, the government asks the Court to account for the inflationary amendment as a factor under 18 U.S.C. § 3553(a)(4) (the kinds of sentence and sentencing range as set forth in the Guidelines) and (a)(6) (avoiding unwarranted disparities). The amendment reflects the Sentencing Commission's considered judgment that offenses at this dollar amount warrant an increase of two fewer levels and will apply to every defendant sentenced under § 2B1.1 after November 1, 2026. Applying an 8-level increase would reduce defendant's total offense level from 17 to 15.[5]

The government disagrees with defendant's Guidelines calculations in one respect, however. Defendant's assertion that the amended Guidelines "eliminated" the residual clause of the sophisticated means enhancement, § 2B1.1(b)(10)(C), is wrong. Defendant cites the proposed amendments published for comment in December 2025. (Def. Mem. at 5.) But while a narrowing of the sophisticated-means enhancement was indeed proposed, along with an alternative that would have relocated it to Chapter Three, neither proposal was included in the April 2026 amendments submitted to Congress. *See* https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2026. The sophisticated means enhancement in § 2B1.1(b)(10)(C) remains unchanged.[6]

---

[5] As described below, the government also requests that the Court apply a further four-level downward variance, resulting in a total offense level of 11.

[6] Defendant's assertion that an offense level of 13 would place him in Zone C and render his "conviction . . . eligible for probation" (Def. Mem. at 5) is also wrong. Defendant is statutorily eligible for probation because a violation of 18 U.S.C. § 371 is a Class D felony, *see* 18 U.S.C. § 3559(a)(4), and probation is neither precluded by statute nor by the offense of conviction, *see id.* § 3561(a); *accord* PSR ¶ 113. That eligibility does not depend on the offense level, but the Guidelines are a separate question, and Zone C does not advance defendant's request: where the applicable range falls in Zone

*(footnote cont'd on next page)*

## IV. THE SECTION 3553(a) FACTORS AND RECOMMENDED SENTENCE

The government asks the Court to vary downward by four additional levels—for a total variance of six levels, including application of the amended Guidelines' loss table— resulting in a total offense level of 11.[7] This variance is warranted for reasons particular to this defendant. Alone among the participants in this conspiracy, defendant's guideline figure measures money he spent rather than money he received. The actual loss the USPPO determined—$143,537—falls below the threshold that will trigger an eight-level increase under the amended loss table, so the offense level may slightly overstate the harm defendant's conduct caused. Moreover, defendant has undertaken substantial post-offense rehabilitation, including founding a nonprofit serving justice-impacted individuals, and is the primary caregiver for a seriously ill parent. And he has already sustained a permanent injunction, an officer-and-director bar, a six-figure civil penalty, a felony conviction, and the reputational consequences that accompany them. Taken together, these considerations support a sentence of probation with a substantial period of home detention.

### A. Nature and circumstances of the offense

Defendant conspired with Jonathan Mikula, Amit Raj Beri, Christian Fernandez, and others to pay $150,000 in undisclosed compensation to those coconspirators so that Mikula would cause Hightimes Holding Corporation to be promoted in Palm Beach Venture, and paid tens of thousands of dollars more in entertainment for the same purpose. (Plea Agmt. ¶ 10.) Palm Beach Venture promoted Hightimes on April 6 and September 23, 2020, each time falsely representing that "Neither the Palm Beach Research Group nor its affiliates receive compensation for bringing this deal to you."

C, "the guidelines do not authorize a sentence of probation," U.S.S.G. § 5B1.1, comment. (n.2); *see* § 5C1.1(d).

[7] The government has determined, in the exclusive judgment committed to it by paragraph 4.d of the Cooperation Agreement, that the information defendant provided did not meet the threshold for substantial assistance, and it therefore does not move under U.S.S.G. § 5K1.1.

Defendant concealed the arrangement through a sham "Marketing Agreement," with payments routed to a Canadian shell corporation. (Plea Agmt. ¶ 10; PSR ¶ 24.) He then gave willfully false testimony to the SEC in its parallel civil investigation, denying that this was "a pay to play arrangement" and any understanding that a share of the payments would reach Mikula. (Plea Agmt. ¶ 10.) The USPPO calculated defendant's total undisclosed compensation to his coconspirators at $180,000 and found that sixteen victims sustained actual losses of approximately $143,537, without finding that any suffered substantial financial hardship. (PSR ¶¶ 26, 30, 41(f).)

What distinguishes defendant is where he stood in the scheme. Mikula was an analyst at Palm Beach Venture who controlled which issuers it promoted and caused it to publish promotions containing false compensation disclaimers, across many issuers, over years. Fernandez negotiated with issuers seeking placement and routed the payments through accounts held in the names of international shell companies. Beri brokered arrangements between Mikula and executives at multiple issuers and took a share for himself. In the government's public filings in the related caser, defendant's coconspirators received approximately $4,272,815 in direct compensation; Beri alone received at least $860,304.

Defendant did none of that. He was an executive at a single issuer who paid to obtain coverage for his own company through one relationship. He did not solicit or receive undisclosed compensation from any issuer, and received none of the $4,272,815 the conspiracy generated. He did not broker arrangements for other issuers' executives, and he did not operate the concealment infrastructure the conspiracy used across its transactions.

His participation was also narrow. The conspiracy encompassed many issuers over years; defendant's involvement was a single arrangement, with a single issuer, producing two promotions and $150,000 in three wires between September 3 and October 16, 2020. He brought no other issuer or issuer executive into the scheme. Defendant represents, and the record in the related case is consistent with, that Beri recruited him rather than

the reverse. (Def. Mem. at 7, citing *United States v. Beri*, No. 2:24-cr-00063-SB-3, Dkt. 109 at 3.) That does not excuse his conduct, but it situates him at the periphery of a scheme that others built and expanded.

**B. History and characteristics of the defendant**

Defendant is 46 years old. He has no convictions of any kind—no juvenile adjudications, no adult convictions, and a criminal history score of zero. (PSR ¶¶ 55–60.) Other than the instant offense, "Levin has been a productive member of society."(Dkt. 48 at 6.)

Defendant left Hightimes in September 2023. (PSR ¶ 96.) Since April 2025 he has served as the founder and executive director of Second Chance Services, a nonprofit serving justice-impacted individuals, in an unpaid and volunteer capacity. (PSR ¶ 94.) He has been treated for long-standing anxiety, and he reports having pursued sobriety since the offense. A sentencing court may consider such post-offense rehabilitation in fashioning an appropriate sentence. *See* 18 U.S.C. § 3661; *Pepper v. United States*, 562 U.S. 476, 490–93 (2011).

Defendant reports that he is the primary caregiver for his mother, who is being treated for serious illness; he resides with her, directs her medical care, and manages her daily needs. (PSR ¶¶ 72, 74; Def. Mem. at 16–17.) That obligation is a proper consideration under 18 U.S.C. § 3553(a)(1), and it is one the Court can accommodate through a sentence served in the community and could not accommodate through a term of imprisonment.

Finally, defendant has already sustained substantial non-criminal consequences. He consented to a judgment with the SEC permanently enjoining him from violating the securities laws, barring him for three years from serving as an officer or director of a reporting issuer, and imposing a civil penalty of $111,614, which he paid in full. *SEC v. Levin*, No. 2:23-cv-08081-CAS (C.D. Cal. Jan. 4, 2024), Dkt. 8. He now stands convicted of a felony.

**C. Just punishment, deterrence, and the form of the sentence**

A sentence of twenty-four months' probation including eight months of home detention is a substantial sanction. For eight months, defendant will be confined to his residence under electronic monitoring, at his own expense, permitted to leave only for purposes the Court and the USPPO approve. He will pay a fine of $180,000 equal to the full amount of undisclosed compensation he provided and restitution to every identified victim, on top of the $111,614 he has already paid the SEC. He will carry a felony conviction for the remainder of his life.

This recommended sentence serves the purposes of § 3553(a)(2). It reflects the seriousness of the offense and provides just punishment. Defendant surrenders every dollar he spent corrupting an investment newsletter, compensates those he harmed, and loses his liberty of movement for eight months. It affords adequate deterrence. The audience for general deterrence in this setting consists of corporate executives and market professionals, for whom a felony conviction, a securities bar, financial sanctions totaling $323,537, and eight months of confinement at home are consequences of real magnitude—and, in defendant's case, consequences that follow visibly and publicly. It protects the public. Defendant has no criminal history, has left the industry in which he offended, and presents a demonstrably low risk of recidivism. And it provides needed treatment and permits defendant to continue caring for his mother and operating the reentry organization he founded, in the manner most effective under § 3553(a)(2)(D).

**D. Unwarranted disparities**

The government does not adopt defendant's characterization of the reach of Section 17(b) or the inference he draws from the observation that anti-touting violations are rarely prosecuted criminally and are "traditionally handled through civil remedies." (Def. Mem. at 5, 15.)[8]

---

[8] Though infrequent, criminal prosecutions under Section 17(b) are not novel. *See, e.g.*, *United States v. Wenger*, 427 F.3d 840 (10th Cir. 2005) (affirming conviction for violating Section 17(b) by touting a company's stock on syndicated radio program and in

*(footnote cont'd on next page)*

A sentence of probation with eight months of home detention would not create an unwarranted disparity among defendants found guilty of similar conduct. Defendant's conduct was not like his co-conspirators' in relevant respects. The § 2B1.1(b)(1) amounts assigned to Mikula ($4,272,815), Fernandez (more than $3,500,000), and Beri ($2,066,313) measured undisclosed compensation that flowed to them and their coconspirators; Beri himself received at least $860,304 in undisclosed compensation, and he caused an issuer to transfer 100,000 shares valued at $600,000 to his brother. Defendant's § 2B1.1(b)(1) amount, $180,000, measured undisclosed compensation he paid out, and he received none of it. That is a difference of eight offense levels in the loss table between defendant and both Fernandez and Mikula, and of six between defendant and Beri, and it reflects a genuine difference in what each defendant did and what each took away from the conspiracy. This Court sentenced Mikula to 28 months' imprisonment, Beri to 9 months, and Fernandez to 6 months, and both Beri and Fernandez received supervised release terms that included three months' home confinement. The government's recommended sentence here of 24 months' probation, including eight months' home detention, would not create an unwarranted disparity.

## V. FINE

The government requests a fine of $180,000—the full amount of undisclosed compensation defendant provided. (PSR ¶ 38.) The statutory maximum is $250,000. 18 U.S.C. § 3571(b)(3).

Although the USPPO recommended waiving fines under § 5E1.2(a), an above-Guidelines fine is warranted here on the § 5E1.2(d) and 18 U.S.C. § 3572(a) factors. Defendant has demonstrated an ability to pay a six-figure penalty: he paid the SEC $111,614 in full. He reports a positive net worth of $849,135. (PSR ¶ 102.) The PSR

newsletter without disclosing compensation); *United States v. Dhillon*, No. 22-cr-10265 (D. Mass. Dec. 4, 2024), Dkt. 81 (judgment). The government's recommendation in this case rests on defendant's individual role and circumstances, and the government neither relies on nor disclaims any broader proposition about charging practice under these provisions.

identifies approximately $6,065 in reported monthly expenses that "historically [have] not been considered as necessary expenses." (PSR ¶ 103.) And defendant does not oppose a fine above the Guidelines range, representing that he "will honor any fine the Court decides is appropriate under 18 U.S.C. § 3571." (Def. Mem. at 29 n.18.)

Most importantly, the fine is the mechanism by which a non-custodial sentence still delivers just punishment and general deterrence. A sentence that returns the entirety of what defendant paid to corrupt an investment newsletter—and still requires him to make his victims whole—communicates that this conduct is not profitable.

The government requests that the fine be payable in full within six months, as this Court ordered for defendant Beri.

## VI. RESTITUTION

Defendant agreed to pay full restitution to victims of his offense, including for relevant conduct. (Plea Agmt. ¶ 6.)[9] Restitution is authorized under 18 U.S.C. § 3663(a)(1)(A). The government requests restitution of $143,537 to the sixteen victims identified at PSR ¶ 120, with at least $20,000 payable within 60 days of judgment and the balance at not less than 10% of gross monthly income or $500 per month, whichever is greater.

## VII. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to: (1) twenty-four months' probation, subject to a condition of eight months' home detention with location monitoring at defendant's expense; (2) a fine of $180,000, payable within six months; (3) restitution of $143,537; and (4) the mandatory $100 special assessment. Such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

---

[9] The two victim impact statements received by the government are thoroughly summarized in the PSR. (*See* PSR ¶¶ 31-32.)